IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

STATE FARM FIRE AND CASUALTY
COMPANY, AS SUBROGEE OF TAYLOR
BOONE AND LAUREL BOONE,                                                    PLAINTIFFS

V.                                                                                        NO. 3:18CV166-M-P

AMAZON.COM, INC.
SAMSUNG SDI CO. LTD.,
JOHN AND JANE DOES 1-10,
AND ABC CORPORATIONS 1-10,                                                DEFENDANTS

**OPINION AND ORDER**

This cause comes before the Court on Defendant Amazon.com's *Motion for Judgment on the Pleadings* [75]. The Court, having reviewed the motion, the parties' submissions, and applicable authorities, is now prepared to rule.

**Factual Background**

Plaintiff, State Farm Fire and Casualty Company (hereinafter "State Farm"), as subrogee of Taylor Boone and Laurel Boone (hereinafter "Boones"), insured the Boones' family residence in Oxford, Mississippi. In 2015, the Boones purchased two self-balancing scooters, more commonly known as hoverboards, from Defendant Amazon.com's [hereinafter "Amazon"] website. The first hoverboard was purchased on October 31, 2015, and the second on November 10, 2015. Both were sold by third parties, with the transaction facilitated by Amazon.

The Boones began using the two hoverboards on or about December 25, 2015. On March 16, 2016, the hoverboards caught fire inside the Boones' home and destroyed it.

1

**Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In a motion for a judgment on the pleadings "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes c. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). Such a motion "is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id*. (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998)). Moreover, in ruling on a motion for judgment on the pleadings, "the district court is confined to the pleadings and must accept all allegations contained therein as true." *Hughes*, 278 F.3d at 420 (citing *St. Paul Ins. Co. v. AFLA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)). In considering Rule 12(c) motions the court relies on the same standard as that of a Rule 12(b)(6) motion. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). The Court must liberally construe the complaint in the light most favorable to the

plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).

## Discussion

Amazon argues that this court should grant its motion for judgment on the pleadings with respect to the Plaintiff's claims for negligence and negligent failure to warn.

### A. Mississippi Products Liability Act

Amazon argues that the Mississippi Products Liability Act (MPLA), Mississippi Code Annotated § 11-1-63 (Rev. 2014), is "the most logical source" to determine whether it is under a product-related duty, and that the MPLA does not apply in this case because it was neither the seller, designer nor the manufacturer of the hoverboard. Instead, Amazon declares itself to be a "service provider," as formulated in *Palermo v. Lifelink Foundation, Inc.*, 152 So.3d 1099 (Miss. 2014) where the Mississippi Supreme Court found that a non-profit tissue bank was shielded from strict products liability by statute, and that the MPLA was inapplicable to service providers because it does not specify service providers as a named category in the Act. *Id.* at 1106. In short, Amazon seems to argue that since the hoverboards are a "product," that its liability is limited to the parameters of the MPLA, and that since it is a "service provider," that it is not liable under the MPLA. Under this line of reasoning, Amazon would have no liability at all.

State Farm alleges in its second amended complaint (hereinafter "complaint") that Amazon acted as a "marketplace" (Comp. ¶ 30) and that common law claims of negligence and failure-to-warn apply rather than MPLA claims.

The relevant code section of the MPLA states:

> In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer, designer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control

3

> of the manufacturer, designer or seller, the manufacturer, designer or seller knew
> or in light of reasonably available knowledge should have known about the
> danger that caused the damage for which recovery is sought and that the ordinary
> user or consumer would not realize its dangerous condition.

Miss. Code. Ann. § 11-1-63(c)(i).

In *Elliot v. El Paso Corp*, 181 So. 3d 263 (Miss. 2015) the Mississippi Supreme Court found that a gas pipeline company which transported natural gas from seller to buyer was not liable for failing to place odorant in the gas under the MPLA stating:

> [Pipeline Company] does not manufacture or sell odorant; it merely transports
> natural gas through its pipelines from producers to purchasers and receives a fee
> pursuant to a federal tariff. The MPLA, by its very terms, does not provide a
> cause of action against a common carrier that merely transports another
> company's product from a manufacturer to a seller.

*Id.* at 271.

The Fifth Circuit, interpreting *Elliott*, found that while the MPLA is the "exclusive remedy for products liability claims against manufacturers, designers, and sellers of a product, its scope remains limited to those three categories." *Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 850 (5th Cir. 2018), as revised (Oct. 8, 2018).

The Fifth Circuit next addressed whether a lessor should be considered a seller, and being unsure if a lessor should be held to the standards of the MPLA or common law "[b]ecause the Mississippi Supreme Court ha[d] not determined whether lessors [were] covered by the MPLA," decided that an *Erie* guess was the most appropriate method to determine the question. This led the Court to apply Mississippi common law. *Funches* at 850-851.

The *Funches* court found that the MPLA is limited to claims against manufacturers, sellers, and designers, observing that the Mississippi Legislature in 2014 amended the statute to insert

4

the word "designers," and finding that had the legislature intended to expand the class beyond manufacturers, designers, and sellers, it could have.

Amazon has cited a number of cases holding that it is not a seller when its website facilitates third-party sales. These cases are irrelevant to the present inquiry as the *Funches* rationale controls in the case sub judice as to whether the MPLA is the exclusive remedy in this case. It is not. Thus, we look to the common law.

If Amazon is not a seller, manufacturer, or designer for purposes of the present discussion, then what is it? Of course the parties disagree. Amazon argues that it is a "service provider," while State Farm says that Amazon is a "marketplace." In this Court's view, these labels have little legal significance, but, the parties having committed to arguing semantics, the Court will attempt to bring some clarity to the issue.

Amazon presents itself as a service provider because it interprets Mississippi law "to not impose duties on service providers to remove from commerce or to warn about products made and sold by others." [Doc. 76, p. 9]. This argument is misplaced. Service providers are not automatically immune for failing to remove from commerce or to warn about products made and sold by others. Indeed, the Court recognizes that true service providers, such as the El Paso Corporation, are statutorily regulated by federal and state commissions and other oversight authorities. Their operations are often subject to stringent safety regulations and their charges are regulated by tariffs. For instance, the Mississippi Public Service Commission tells service providers of electric power where to place meters. In another example, the Mississippi Public Service Commission requires service providers of natural gas to have at least 100 hours of training on operating pipeline facilities. To the contrary, this Court is not aware of any regulations dictating how Amazon charges for use of its web-site or promotes services. It is not a

true service provider. No one oversees Amazon's operations or tells it how much to charge. Amazon in fact enjoys the benefits of a free market, with its attendant common law responsibilities, whether it is labeled a service provider or a marketplace.

Amazon also cites *Roell v. Stryker Corp.*, 2007 WL 2783357, (S.D. Miss. 2007) where a plaintiff brought a duty to warn claim against the service provider, St. Dominic Hospital, for a medical device that allegedly malfunctioned. *Id*. at 4-5. The court found St. Dominic did not have a duty to warn because it was not in the direct chain of commerce. Unlike St. Dominic, Amazon is in the direct chain of commerce. Amazon facilitates transactions, collects fees, and ships products for third parties.

Mississippi law does not provide automatic immunity to service providers though the legislature has carved out some subcategories, or hybrids, of service providers, such as those benefitting from the "blood shield statutes," which appear to be treated differently from other common law tortfeasors. In *Palermo* and *Roell*, the court found that strict liability, as structured in the MPLA, does not apply to service providers. However, *Palermo* does not hold that service providers have no liability. To the contrary, the *Palermo* court found that the Mississippi Legislature had provided separate statutory protection for suppliers of blood and blood products, outside the MPLA and the common law. Amazon enjoys no such statutory exemption at this time.

State Farm argues that Amazon is a "marketplace," rather than a service provider, though, like, Amazon, State Farm fails to define its preferred term, and, in State Farm's defense, we find no definition of marketplace in Mississippi case law. So we look elsewhere. Benjamin Edelman and Abbey Stemler, in their recently published article *From the Digital to the Physical: Federal Limitations on Regulating Online Marketplaces* define "marketplace" as follows:

> A marketplace is a type of platform that facilitates a commercial transaction--be it the exchange of cash for a ride to the airport, or a night on someone's couch. Marketplaces create the digital space for commerce, reducing transaction costs and allowing people to easily interact and transact. Unlike traditional firms, marketplaces do not create or even acquire the products or services to be sold. Rather, they serve to connect buyers and sellers.

56 Harv. J. on Legis. 141, 144 (2019). Finding no better definition, the Court finds the Edelman and Stemler definition applicable herein.

To the extent such marketplaces are collecting something of value for providing their services, then common law liability should apply because such marketplaces are in the direct chain of commerce.

The Court determines that Amazon is a marketplace, which is a subcategory of service provider. Arguably, both sides win on this technical dispute. Specifically, in this case, Amazon operated a digital space for commerce that on two occasions seamlessly connected the Boones to third party sellers. Though it neither manufactured, designed or sold the hoverboards, it did serve as a facilitator to connect the sellers to the Boones. The question becomes what liability attaches to such a marketplace facilitator.

The Court will now address whether State Farm's common law negligence and failure-to-warn claims are sufficiently alleged in its complaint.

**B. Negligence**

In Mississippi, "[t]he elements of a negligence claim are duty, breach of duty, proximate cause, and damages." *Mladineo v. Schmidt*, 52 So.3d 1154, 11162 (Miss. 2010). "To prevail in

any type of negligence action, a plaintiff must first prove the existence of a duty." *Enter. Leasing Co. S. Cent. v. Bardin*, 8 So.3d 866, 868 (Miss. 2009).

State Farm alleges that Amazon had a duty to the Boones because Amazon provided the marketing and transactional services that led to the Boones' purchases. (2nd Amend. Compl. ¶ 16). State Farm further alleges Amazon breached its duty to the Boones by not removing the dangerous hoverboards from its marketplace and that Amazon's breach was the proximate cause of the Boones' damages. (*Id*. ¶ 31, 23, and 25).

State Farm specifically alleges in its complaint as follows.

> Prior to the sale of the subject Hoverboards, Amazon breached this duty by failing to remove hoverboards, like the hoverboard purchased by the Boones from its marketplace or website, despite its knowledge of the fire hazards associated with the hoverboards. (2nd Amend. Compl.¶ 31).
>
> In addition to these specific notices, Amazon knew they were facilitating the shipment of poor-quality hoverboards manufactured in China and which contained lithium-ion batteries that were causing fires throughout the United States. (*Id*. ¶ 23).
>
> All or nearly all of the hoverboards Amazon was selling and distributing, including upon information and belief the subject Hoverboards, failed to comply with UN/DOT 38.3, Transport of Dangerous Goods for Lithium Metal and Lithium Ion Batteries. Likewise, the hoverboards were extremely dangerous and presented a substantial product hazard as defined in 15U.S.C. § 206(a). (*Id*. ¶ 25).
>
> State Farm alleges that Amazon was the proximate cause that resulted in the Boones having damages exceeding $600,000. (*Id*. ¶ 32)

These allegations state sufficient facts to allow a reasonable jury to find plausibility in the negligence claim under *Iqbal*.

### C. Negligent Failure-to-Warn

State Farm alleges a common law failure-to-warn claim against Amazon. Amazon argues that a common law negligent failure-to-warn claim is no longer applicable because it was

superseded by the MPLA. This is the same argument it stated in its previous negligence claim. The court continues to disagree with Amazon.

The Court's earlier *Erie* guess holds that the MPLA is not applicable to marketplaces. Hence, the common law will be used to analyze State Farm's negligent failure-to-warn claim. To prove a common law negligent failure-to-warn claim, the plaintiff must demonstrate there was a "duty, breach, causation, and harm." 905 F.3d 846, 853.

The parties discuss *Love v. Weecoo (TM)*, No. 18-14823, 2019 WL 2156892, (11th Cir. May 16, 2019) on this issue. In *Love*, a Georgia plaintiff bought a lithium ion battery powered hoverboard through Amazon's website on November 22, 2015. *Id*. at 1. On February 5, 2016, the hoverboard caused a fire that destroyed the Plaintiff's home. *Id*. Along with a negligence claim, Plaintiff alleged a negligent failure-to-warn claim and punitive damages claim. *Id.* Plaintiff's failure-to-warn claim was based on the alleged fact that Amazon had actual or constructive knowledge that the hoverboards had caused fires on four specific occasions before plaintiff's purchase on November 22, 2015. *Id* at 522. The plaintiff also alleged "that thousands of hoverboards were seized by United States custom authorities based on concerns about the hoverboards' 'potentially explosive lithium batteries.'" *Id*.

The court found there was a material issue of fact because the "[p]laintiff alleged enough facts to state plausibly that Amazon had actual or constructive knowledge that the Hoverboard posed a risk of fire at the time of Plaintiff's purchase." *Id*.

Additionally, the court held "We also reject for now Amazon's assertion that the dates of the alleged written notifications to Amazon were too close in time to Plaintiff's purchase of the Hoverboard to trigger Amazon's duty to warn. The time-insufficiency of the written notifications is not so obvious that it can be decided on this motion to dismiss." *Id*.

Here, the Boones bought their second hoverboard on November 10, 2015 through Amazon's marketplace, thus creating a duty, as alleged. (2nd Amend. Compl. ¶14) and (1st Compl. Ex. 2). The Boones allege in their complaint that between November 11, 2015 and January 3, 2016, Amazon had been notified of nine fires caused by hoverboards sold through its website yet failed to warn the Boones. Thus, there is an alleged breach of duty (2nd Amend. Compl. ¶ 22). The resulting breach of duty supports the Plaintiff's complaint that Amazon's breach was the direct and proximate cause of the Boones' damages in excess of $600,000. (*Id*. ¶ 40). Little more need be said.

The Court finds that State Farm's complaint and exhibits allege sufficient facts to warrant a reasonable jury to plausibly find for the Plaintiff on its negligent failure-to-warn claim.

This Court also finds, as did the court in *Love*, that the time-insufficiency between the Boones' second hoverboard purchase and written notifications to Amazon do not automatically warrant a dismissal.

## Conclusion

Therefore, the Court **DENIES** Defendant's *Motion for Judgment on the Pleadings* [75]. Plaintiff's claims of negligence and negligent failure-to-warn remain viable.

**SO ORDERED**, this, the 31st day of October, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**